UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARTA O. GARCIA and FABIAN J. MEIJA,**<br><br>    Plaintiffs,<br><br>v.<br><br>**WALMART, INC., WALMART STORES, INC., WAL MART STORES, INC., WAL MART STORES EAST INC., WAL-MART STORES EAST I, LP, WALMART ASSOCIATES INC., WALMART STORE NUMBER 3562, JOHN DOE 1–5, MARY DOE 1–5, and DOE CORPORATION 1–5,**<br><br>    Defendants. | Civ. No. 17-03118 (KM) (CLW)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Marta Garcia slipped and fell at a Walmart store. She and her husband sued Walmart for negligence. Walmart now moves for summary judgment. (DE 29.)[1] For the following reasons, the motion is **DENIED**.

I.  **BACKGROUND**

Garcia visited a Walmart store and browsed the health and beauty aids aisle where hair products were displayed. (Garcia Dep. at 33:19–24; Video at

---

[1]    Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = Complaint (DE 1-1)

Garcia Dep. = Deposition of Marta Garcia (DE 29-7)

Video = Walmart Surveillance Video (DE 29-8, screenshots are provided at DE 33-1)

Mot. = Walmart's Brief in Support of its Motion for Summary Judgment (DE 29-1)

Opp. = Garcia's Brief in Opposition to Walmart's Motion (DE 33)

10:43.) She took a few steps towards a display shelf but slipped and fell. (*Id.* at 34:12–15.) She had not seen or felt anything on the floor. (*Id.* at 37:2–8.) A Walmart employee saw the fall and approached Garcia. The employee saw hair conditioner on the floor near the location of the fall. (*Id.* at 36:13–25.) An ambulance arrived and took Garcia to a hospital. (*Id.* at 40:22–41:3.)

Surveillance cameras captured the events. In the hour before Garcia's fall, Walmart-affiliated employees are twice seen removing and placing products on the shelves. (Video at 10:06:13, 10:12:24.) Shortly afterward, a customer picks a bottle from the shelf, drops it, returns it the shelf, and leaves the area. (*Id.* at 10:23:58.) Twenty minutes elapse, during which no Walmart employee appears on camera in that aisle. Then, Garcia enters the aisle and slips and falls at the location where the customer dropped the bottle. (*Id.* at 10:43:39–56.)

Garcia sued Walmart for negligence in New Jersey Superior Court. (Compl., Count 1). Her husband also asserted a claim to recover for loss of consortium. (*Id.*, Count 2). Walmart removed the case to this Court. (DE 1.) Fact discovery having been completed, Walmart moves for summary judgment. (DE 29.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of establishing that no genuine issue of material fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. A court must construe all facts and inferences in the light most favorable to the nonmoving party. *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir. 1998). Once the moving

party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present evidence creating a genuine issue as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely).

## III.   DISCUSSION

This is a negligence case. "The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Shields v. Ramslee Motors*, 223 A.3d 172, 176 (N.J. 2020) (citation omitted). "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." *Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314, 316 (N.J. 2003). Accordingly, "an injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Id.* That burden, however, changes when the "mode-of-operation rule" applies, as Garcia argues it does here. *Prioleau v. Ky. Fried Chicken, Inc.*, 122 A.3d 328, 335 (N.J. 2015).

I first discuss the mode-of-operation rule, but find that it does not apply here. (Section III.A.) I therefore go on to discuss whether Walmart had actual or constructive notice of the spilled conditioner. (Section III.B.) Because that question presents material issues of fact, summary judgment is denied.

### A. Mode-of-Operation Rule

The mode-of-operation rule applies where a business has adopted a practice that in effect transfers risk from the business to the consumer. It may be considered a response to the rise of the retail self-service model. What now seems an inevitability was once an innovation; there was a time when, for example, a grocery shopper would give a shopping list to a clerk, who would

3

weigh out dry goods from barrels. *See, e.g.*, Kat Eschner, *The Bizarre Story of Piggly Wiggly, the First Self-Service Grocery Store*, Smithsonian Magazine (Sept. 6, 2017), https://www.smithsonianmag.com/smart-news/bizarre-story-piggly-wiggly-first-self-service-grocery-store-180964708/.[2] No longer. Because it cut costs, the self-service model became ubiquitous in consumer retail in the mid-twentieth century. *Id.* Walmart, the efficient retailer of consumer goods *par excellence*, is no exception.

But self-service operation, though very common, is nevertheless a choice. The mode-of-operation rule applies when a plaintiff's injury arises from a business's decision to operate on a self-service model. *Prioleau*, 122 A.3d at 337–38. When a business allows customers to serve themselves, there is an increased "risk that a dangerous condition will go undetected and that patrons will be injured." *Id.* at 338. Given the increased risk, there arises an "inference of negligence" sufficient to alleviate plaintiff's burden to prove that the business had actual or constructive notice of a dangerous condition. *Id.* at 337 (citation omitted). Instead, the burden shifts to the defendant to "show that it did all that a reasonably prudent man would do in the light of the risk of injury the operation entailed." *Id.* (quotation marks, alteration, and citation omitted).

The mode-of-operation rule, however, applies only in "limited circumstances." *Id.* at 330. It is appropriate when "as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." *Id.* at 337 (citation omitted). There must be "a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." *Id.* at 338.

Illustrations abound. The New Jersey Supreme Court has applied the rule to injuries occurring when a plaintiff slipped on (1) a grape near an area of

---

[2] Clarence Saunders, the founder of Piggly Wiggly, patented his invention of the "self-service store" in 1917. Piggly Wiggly was a pioneer or early adopter of such now-commonplace retail features as checkout stands, price marking of items on self-service shelves, and shopping carts. Eschner, *supra*.

4

supermarket that displayed produce in open-top bags, *Nisivoccia*, 818 A.2d at 317, (2) a green bean in a produce aisle with open bins, *Wollerman v. Grand Union Stores, Inc.*, 221 A.2d 513, 514 (N.J. 1966), and (3) a sticky substance in a cafeteria, *Bozza v. Vornado, Inc.*, 200 A.2d 777, 787 (N.J. 1964). Those areas and objects all "invite[]" actions by customers, and those actions carry a greater risk of spilling or dropping slippery material than would be present in ordinary business operations. *Nisivoccia*, 818 A.2d at 317. But the court has rejected application of the rule to a customer's slip-and-fall on water tracked in from outside. *Prioleau*, 122 A.3d at 339. The tracked-in water, the court held, was not a special feature of a self-service operation but a risk that "exists in virtually any facility that admits patrons from public sidewalks or parking areas." *Id.*

This case, however, does not involve the dangers of self-service in the relevant sense. It is true, of course, that Walmart customers are expected to select sealed bottles of shampoo or conditioner from the shelves and place them in their shopping carts. But they are not invited or expected to open the bottles or dispense the contents until they get home. Garcia allegedly slipped on *liquid* from one of the bottles. Nothing about the presence of liquid is a regular or inevitable feature of the practice of permitting customers to select the bottles themselves. To invoke the mode-of-operation doctrine, the plaintiff would need to demonstrate that something about Walmart's operations created a particular risk that liquids would spill from the bottles and end up on the floor of the aisle. She has not.

*Layden v. Target Corp.* is instructive. There, a plaintiff walking in the aisle of a Target store slipped on a small plastic hook typically used to hang clothing on racks. 768 F. App'x 152, 154–55 (3d Cir. 2019). The Third Circuit explained that these hooks did not implicate self-service because, although customers encounter the hooks when they handle clothes, and they *could* rip off the hooks, the plaintiff "identifie[d] no aspect of their characteristics or packaging that *invited* removal so that a substantial risk of injury is inherent in

5

Target's use of them." *Id.* at 158 (emphasis added) (quotation marks and citations omitted).

A substantial body of case law is in accord with *Layden*.[3] The cases regularly reject the application of the mode-of-operation rule based on nothing more than a store's placing of merchandise in closed containers on shelves that are accessible to shoppers. Something more, such as a particular risk of spilling, must be present.

The same principles are at work here. Common sense and the evidence suggest that the ordinary operation of Walmart's system entails a customer's picking out a bottle and placing it in a cart, without ever exposing the liquid contents. Of course, it is not impossible that a Walmart customer could open a shampoo bottle; nor is it impossible that a bottle could drop and crack. But there is no evidence that Walmart's display of merchandise on shelves invites customers to open the bottles or creates a particular risk of a bottle's being cracked. The ordinary business-invitee rules of negligence, not the mode-of-operation rule, govern this situation.[4]

---

[3]     *See Quejada v. ShopRite*, No. A-0923-19T3, 2021 WL 162683, at *2 (N.J. Super. Ct. App. Div. Jan. 19, 2021) (per curiam) (slip on liquid did not have nexus to self-service when "[t]here was no evidence that defendant dispensed liquid products in open containers"); *Colon v. Toys "R" Us-Del., Inc.*, No. A-0491-15T4, 2017 WL 1166445, at *3 (N.J. Super. Ct. App. Div. Mar. 29, 2017) (per curiam) (slip on bubble blowing liquid had no nexus to self-service when there was nothing the store did to invite use of the product in-store); *White v. 525 Meat Corp.*, No. A-1410-13T1, 2014 WL 11099412, at *4 (N.J. Super. Ct. App. Div. Feb. 22, 2016) (per curiam) (slip on leaked liquid from detergent bottle no nexus to self-service when there was no evidence that customers handled bottles in such a way to be prone to spillage); *Anderson v. Stop & Shop Supermarket Co.*, No. A-4060-14T2, 2016 WL 6518597, at *3 (N.J. Super. Ct. App. Div. Nov. 3, 2016) (per curiam) (mode-of-operation rule not applicable to slip in frozen food aisle because "items in the frozen food aisle are not likely to spill out of a sealed container"); *Lee v. Shoprite*, 2012 WL 1605205, at *3 (N.J. Super. Ct. App. Div. May 9, 2012) (per curiam) (same).

[4]     It is possible to distinguish a case in which customers are juggling multiple items at a supermarket checkout area, if the evidence establishes a risk of dropping or spilling items. In that connection, Garcia cites *McCracken v. Target Corp.*, Civ. No. 09-

The New Jersey Supreme Court has warned against expanding the mode-of-operation rule. *Prioleau*, 122 A.3d at 338–39. To apply the rule based on nothing more than a shopper's selection of products from a shelf would expand its operation to most retail operations. *Lee v. Shoprite*, 2012 WL 1605205, at *3 (N.J. Super. Ct. App. Div. May 9, 2012). Such a broad application turns an exception into a rule and swallows the routine application of the business invitee standard of negligence, which is fairly stringent to begin with. Based on common sense and precedent, I decline to apply the mode-of-operation rule here.

---

4816, 2011 WL 1466075, at *1 (D.N.J. Apr. 18, 2011). (Opp. at 16.) I find the case to be both distinguishable and suspect in light of intervening case law.

In *McCracken*, the plaintiff fell in an area of Target near check-out lanes where shopping baskets were provided. Just before she fell, a customer with "an unmanageable number of items" shoveled them into a basket, and a bottle of mouthwash fell out and spilled. *Id.* The court held that the mode-of-operation rule applied because the area was where customers "handle[d] [products] during the process of selection and bagging." *Id.* at *5 (quotation marks and citation omitted).

*McCracken* is distinguishable because the accident here did not occur in such an area. An area near check-out that provided baskets was "[a] location within a store where a customer handles loose items during the process of selection and bagging from an open display" and so "is a self-service area." *Nisivoccia*, 818 A.2d at 317 (cited in *McCracken*). Such areas may qualify for the mode-of-operation doctrine because "[c]ustomers typically unload their carts onto the checkout counter," so that "[d]roppage and spillage during that process are foreseeable." *Id.* A regular aisle, where shoppers select items one at a time, does not seem to pose the same risk.

*McCracken* must also be relied on with caution because it predates *Prioleau*, which refined and tightened the mode-of-operation rule. Post-*Prioleau* Appellate Division cases with similar facts are hard to square with *McCracken*. For example, in cases involving spills from bottled water and detergent bottles in check-out areas, the Appellate Division has held that the rule did not apply because it was not foreseeable that those items, which are not unusually prone to breaks or leaks, would be likely to spill when handled at check-out. *Quejada*, 2021 WL 162683, at *3; *White*, 2014 WL 11099412, at *4. Both cases distinguished *Nisivoccia*, on which *McCracken* relied, because that case involved a slip on grapes packaged in open containers which were likely to spill over in the bustle of check-out. *Id.*; *see also Betancourt v. Home Depot U.S.A., Inc.*, Civ. No. 16-07255, 2018 WL 3954854, at *4 (D.N.J. Aug. 16, 2018) (slip on unidentified liquid in check-out area insufficient to apply rule because plaintiff needed to show that the liquid was prone to spillage in the check-out setting).

7

### B. Constructive Notice

Because the mode-of-operation rule does not apply, Garcia must show that Walmart was on actual or constructive notice of the spilled conditioner. *Prioleau*, 122 A.3d at 335. There is no surveillance evidence that any Walmart employee actually entered the aisle following the prior customer's mishandling of the conditioner bottle or observed the spilled conditioner. It is appropriate, then, that both sides confine their arguments to constructive notice.

"A defendant has constructive notice when the condition existed for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." *Troupe v. Burlington Coat Factory Warehouse Corp.*, 129 A.3d 1111, 1114 (N.J. Super. Ct. App. Div. 2016) (quotation marks and citation omitted). Constructive notice is usually a question of fact for the jury, *e.g.*, *Betancourt v. Home Depot U.S.A., Inc.*, Civ. No. 16-07255, 2018 WL 3954854, at *5 (D.N.J. Aug. 16, 2018), but may be appropriate for summary judgment when no reasonable juror could conclude otherwise, *e.g.*, *Troupe*, 129 A.3d at 1114.

The key fact in determining constructive notice is the length of time that the hazard was present. As to the precise amount of time that will trigger constructive notice, then-Judge, future-Justice, Brennan opined that 45 minutes would create a jury question, but a shorter interval *could* suffice. *Zizi v. Gabriele D'Annunzio Lodge*, 83 A.2d 334, 335–36 (N.J. Super. Ct. App. Div. 1951). Ever since, courts have often used 45 minutes as a benchmark. *McCracken*, 2011 WL 1466075, at *3 (collecting cases). Nonetheless, "courts have certified a wide range of times for jury consideration," including periods less than 45 minutes. *Yazujian v. PetSmart*, Civ. No. 13-06202, 2016 WL 4408817, at *8 (D.N.J. Aug. 16, 2016) (collecting cases).

Here, 20 minutes elapsed between the spill and Garcia's fall. No New Jersey court has addressed whether or in what circumstances 20 minutes can establish constructive notice. A court in this District noted in *dicta* that 20 minutes might not be long enough to create constructive notice. *Yazujian*, 2016

WL 4408817, at *8. Indeed, the cases finding constructive notice have generally involved longer time periods. *E.g.*, *Zizi*, 83 A.2d at 335–36 (45 minutes); *Ratering v. Mele*, 78 A.2d 105, 107 (N.J. Super. Ct. App. Div. 1951) (two and a half hours). It cannot be said, though, that there is a body of New Jersey case law sufficient to convert this issue of fact into one of law.

In the absence of New Jersey case law, Walmart points to cases from other jurisdictions holding that 20 minutes is not sufficient. (Mot. at 4–5.) And many cases have so held.[5] But many other cases, if not more, have held that 20 minutes suffices, or at least suffices to create an issue for the jury.[6] Thus, there is no consensus view to follow. *See Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, Civ. No. 18-10675, 2021 WL 303030, at *4 (D.N.J. Jan. 29, 2021) ("Lacking more specific guidance, a federal court may identify a majority view and predict that a state supreme court would adopt it." (citation omitted)).

The issue, moreover, is not merely one for the stopwatch. "The period of time sufficient to prove a defendant's constructive knowledge also depends on the characteristics of and surrounding the dangerous condition." *Yazujian*, 2016 WL 4408817, at *8. Considering the amount of time elapsed plus characteristics of the hair care aisle, while taking inferences in Garcia's favor, I conclude that there is a genuine issue of fact as to constructive notice. I give three reasons.

---

[5] *E.g.*, *Lyman v. PetSmart, Inc.*, No. 16 Civ. 04627, 2018 WL 4538908, at *8 (S.D.N.Y. Sept. 21, 2018); *Carraway v. Nat'l Super Markets, Inc.*, 741 S.W.2d 895, 896 (Mo. Ct. App. 1987); *Otis v. First Nat'l Bank of Minneapolis*, 195 N.W.2d 432, 433 (Minn. 1972) (per curiam).

[6] *E.g.*, *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 798 (11th Cir. 2019) (per curiam); *Contreras v. Wal-Mart Stores, Inc.*, No. 14-0973, 2015 WL 12656938, at *6 (C.D. Cal. May 8, 2015); *Geleta v. Meijer, Inc.*, No. 11 CV 6567, 2013 WL 6797111, at *6 (N.D. Ill. Dec. 23, 2013); *Mack-Epps v. Supervalu, Inc.*, No. 11-530, 2011 WL 4985816, at *3 (D. Md. Oct. 18, 2011); *Alexander v. Marriott Int'l*, No. 01 Civ. 1124, 2002 WL 1492125, at *3 (S.D.N.Y. July 11, 2002); *Bellot v. Kmart Corp.*, 769 So.2d 25, 27 (La. Ct. App. 2000); *Combs v. First Nat'l Supermarkets*, 663 N.E.2d 669, 671 (Ohio Ct. App. 1995).

First, although 20 minutes is not a long time, it is enough time that "a jury could find that a cleanup should have occurred." *Mack-Epps v. Supervalu, Inc.*, No. 11-530, 2011 WL 4985816, at *3 (D. Md. Oct. 18, 2011). At the least, a juror could find it unreasonable where, as here, not a single employee even walked down the aisle in a 20-minute span. To be sure, a juror could find the opposite; but that is the essence of a material *issue* of fact.

Second, a rational juror could find that the shampoo aisle is a high traffic area, raising an inference that a reasonable business would attend to it more than Walmart did here. The more traffic, the more a business is on notice that it needs to maintain the area. *McCracken*, 2011 WL 1466075, at *3. True, the hair care aisle is not as busy as the check-out area, which is staffed and may require vigilance that is constant. *Compare id.* But neither is it a far-flung corner of a megastore, selling rare or specialty items.

Third, the products sold in the hair care aisle pose risks that warrant checks from employees. *See McCracken*, 2011 WL 1466075, at *3 (considering that the area was prone to spills). Most, if not all, of the products are slippery liquids. It would take only one broken bottle to create a slip-and-fall hazard and that (with the benefit of hindsight, of course) is exactly what happened here. Again, this circumstance would not require summary judgment in plaintiff's favor, but it does contribute to a triable issue.

The evidence in the record is sufficient to raise a genuine, material issue of fact as to whether Walmart had constructive notice of the conditioner spill.

### IV. CONCLUSION

For the reasons set forth above, Walmart's motion for summary judgment is denied.

A separate order will issue.

Dated: February 26, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**